UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONNA WILEY,

                        Plaintiff,

v.                                              1:14-CV-1447
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LEGAL AID SOCIETY OF                            ADAM DEFAYETTE, ESQ.
NORTHEASTERN NEW YORK, INC.
  Counsel for Plaintiff
100 Court St.
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.                     ANDREEA LECHLEITNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 12.)  This case has proceeded in accordance with General

Order 18.

Currently before the Court, in this Social Security action filed by Donna Wiley

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, it is recommended that Plaintiff's motion be granted in part and denied in part, and Defendant's motion be granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on December 15, 1957. (T. 101.) She completed a two year college program. (T. 123.) Generally, Plaintiff's alleged disability consists of rheumatoid arthritis, degenerative disc disease, and neck impairment. (*Id.*) Her alleged disability onset date is June 26, 2009. (T. 101.) Her date last insured is December 31, 2014. (T. 117.) She previously worked as a bookkeeper. (T. 124.)

### B. Procedural History

On April 20, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 117.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 20, 2013, Plaintiff appeared before the ALJ, Carl E. Stephan. (T. 29-47.) On April 18, 2013, ALJ Stephan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 10-24.) On September 26, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 15-21.) First, the ALJ found that Plaintiff met the insured status

requirements through December 31, 2014 and Plaintiff had not engaged in substantial gainful activity since June 26, 2009. (T. 15.) Second, the ALJ found that Plaintiff had the severe impairment of fibromyalgia. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work. (*Id.*)[1] Fifth, the ALJ determined that Plaintiff was capable of performing her past relevant work as a comptroller and bookkeeper. (T. 19-20.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes essentially four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to classify Plaintiff's osteoarthritis and spinal stenosis as severe impairments at step two. (Dkt. No. 9 at 9-10 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to comply with 20 C.F.R. § 404.1545(a)(2); specifically, 1) the ALJ failed to properly assess Plaintiff's credibility, 2) the ALJ failed to provide for limitations on Plaintiff's use of her hands, and 3) the ALJ failed to properly assess Plaintiff's past relevant work. (*Id.* at 10-13.) Third, Plaintiff argues the ALJ failed to properly assess the opinion of Plaintiff's treating physician; specifically, 1) the ALJ failed to follow the factors outlined in the Regulations, 2) the ALJ misconstrued the record, and 3) the ALJ failed to provide "good reasons" for the weight he assigned Plaintiff's treating physician. (*Id.* at 13-17.) Fourth, and lastly, Plaintiff

---

[1]        Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

argues the ALJ failed to evaluate Plaintiff's fibromyalgia under Social Security Ruling ("SSR") 12-2p, (S.S.A. July 25, 2012). (*Id.* at 17-19.)

## B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ reasonably found that Plaintiff did not have additional limitations from her osteoarthritis and hand impairments. (Dkt. No. 10 at 5-7 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ properly considered the medical evidence in the record and reasonably concluded Plaintiff retained the RFC for sedentary work; specifically, 1) the ALJ reasonably found that Plaintiff did not have additional limitations from her osteoarthritis and hand impairment, 2) the ALJ properly gave little weight to the opinion of Plaintiff's treating physician, and 3) the ALJ reasonably evaluated Plaintiff's fibromyalgia. (*Id.* at 7-18.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §

404.1520.  The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work activities.
> If the claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an impairment which
> is listed in Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is afflicted
> with a "listed" impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work.  Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant could perform.
> Under the cases previously discussed, the claimant bears the burden of
> the proof as to the first four steps, while the [Commissioner] must prove
> the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

For ease of analysis, Plaintiff's arguments will be address out of order.

### A.    Whether the ALJ Erred at Step Two

After carefully considering the matter, the Court answers this question in the

negative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 10 at 8-

10 [Def.'s Mem. of Law].)  The Court adds the following analysis.

At step two of the sequential evaluation process, the ALJ must determine

whether the plaintiff has a severe impairment that significantly limits his or her physical

or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  The plaintiff

bears the burden of presenting evidence establishing severity. *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 404.1512(a).

Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis*

disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F.Supp.3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

At step two the ALJ determined Plaintiff had the severe impairment of fibromyalgia. (T. 15.) Plaintiff argues the ALJ should have considered impairments of osteoarthritis and spinal stenosis as severe impairments at step two and this error caused Plaintiff harm because the ALJ then failed to determine whether or not those impairments met or equaled a Listing at step three. (Dkt. No. 9 at 10 [Pl.'s Mem. of Law].)[2] Although the ALJ did not find Plaintiff's impairments of arthritis and spinal stenosis severe, he did find she had a severe impairment, thus allowing the sequential process to proceed. Further, the ALJ took Plaintiff's arthritis and spinal stenosis into consideration in his RFC analysis. The ALJ thoroughly discussed these impairments in his decision and analysis. For example, the ALJ discussed objective medical imaging of Plaintiff's cervical spine which indicated degenerative disc disease and foraminal stenosis. (T. 17, 18.) The ALJ also discussed objective medical imaging of Plaintiff's hands which indicated early osteoarthritis. (T. 18, 19.) Although the ALJ did not find Plaintiff's degenerative disc disease or hand impairments to be severe, he considered the effects of all of Plaintiff's impairments, severe and non-severe, in his analysis. Therefore any error at step two was harmless and remand is not recommended.

**B. Whether the ALJ Properly Evaluated the Medical Opinion of the Record**

---

[2] Plaintiff does not state which Listing she would meet nor does Plaintiff cite to medical evidence which would support the conclusion that she meets or equals a Listing.

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 9 at 13-17 [Pl.'s Mem. of Law].) The Court adds the following analysis.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

On May 11, 2011, Plaintiff sought treatment from Majeed Siddiqui, M.D. (T. 271.) Plaintiff complained of joint pain in her hands, wrists, and ankles. (T. 272.) She also complained of joint stiffness and swelling. (*Id.*) On examination, Dr. Siddiqui noted Plaintiff had full range of motion in her cervical and lumbar spine, full range of motion in her upper and lower extremities. (*Id.*) He also noted Plaintiff had normal sensation and motor strength. (*Id.*) Dr. Siddiqui noted Plaintiff's lab results for ANA and rheumatoid factor were normal. (T. 271.) Dr. Siddiqui started Plaintiff on Celebrex. (*Id.*)

Plaintiff met with Dr. Siddiqui again on May 18, 2011. (T. 268.) Dr. Siddiqui noted Plaintiff complained of joint pain in her hands, wrists, and ankles. (T. 269.) Dr. Siddiqui noted Plaintiff was improving with treatment. (T. 268.) On examination, Dr. Siddiqui noted Plaintiff had full range of motion in her spine, upper extremities, and lower extremities. (T. 296.) Dr. Siddiqui also reviewed medical imaging which indicated Plaintiff had "severe degenerative disc disease" at C3-4 through C6-7; degenerative disc disease at C4-5 and C5-6; multilevel bilateral foraminal stenosis due to osteophyte impingement most marked at C4-5, C5-6, and C6-7 on the right and C4-5, C6-7 on the left. (T. 268.)

On June 7, 2011, Dr. Siddiqui noted Plaintiff requested he complete disability paperwork; however, he did not have all of her medical records and ordered them. (T. 329.) Dr. Siddiqui referred Plaintiff to a rheumatologist. (T. 265.)[3] Plaintiff complained of joint pain in her hands, wrists, ankles and feet, as well as joint stiffness and swelling. (T. 330.) Dr. Siddiqui noted on examination Plaintiff had full range of motion in her cervical and lumbar spine, and full range of motion in her upper and lower extremities. (T. 331.) He also noted full motor strength in all upper and lower extremities. (*Id.*) On June 15, 2011, Dr. Siddiqui examined Plaintiff for a recheck of her rheumatoid arthritis. (T. 264.) At that time, Dr. Siddiqui noted testing for rheumatoid arthritis was normal. (*Id.*) Plaintiff sought treatment from Dr. Siddiqui three times in September of 2011 for bronchitis. (T. 326, 323, 320.)

On October 12, 2011, Dr. Siddiqui completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction

---

[3] Dr. Siddiqui's notations indicate Plaintiff was referred to a "Dr. Handler;" however, the medical records indicate she received treatment from Steven Flinkenstein, D.O. (*see* T. 310, 278.)

Determination form for the New York State Office of Temporary and Disability Assistance. (T. 331-332.) Dr. Siddiqui stated Plaintiff suffered from rheumatoid arthritis, osteoarthritis, and fibromyalgia. (T. 332.) Dr. Siddiqui opined Plaintiff was "very limited" in her ability to: walk, stand, sit, lift, carry, push, pull, bend, use her hands, and function in a work setting at a consistent pace. (T. 333.) Dr. Siddiqui opined Plaintiff was "moderately limited" in her ability to use stairs or other climbing. (*Id.*) Dr. Siddiqui opined Plaintiff had "no evidence of limitations" in her ability to: see, hear, speak; understand and remember instructions; carry out instructions; maintain attention/concentration; make simple decisions; interact appropriately with others; maintain socially appropriate behavior without exhibiting behavior extremes; and maintain basic standards of personal hygiene and grooming. (*Id.*) Dr. Siddiqui specifically noted Plaintiff was unable to sit/stand more than ten minutes. (*Id.*) The form completed by Dr. Siddiqui did not provide definitions of the terms "very limited" or "moderately limited." (T. 332-333.) Although the form provides specific work related functional limitations, the limitations are vague; however, Dr. Siddiqui did specifically state Plaintiff was limited to sitting and standing for ten minutes at a time. (T. 333.)

The ALJ afforded Dr. Siddiqui's opinion "limited weight." (T. 19.) The ALJ reasoned Dr. Siddiqui "based his assessment in part on information from [Plaintiff] that she [had] a diagnosis of rheumatoid arthritis, when all of her testing has failed to support that diagnosis." (*Id.*) The ALJ also reasoned, Plaintiff's "physical examination was normal;" however, the ALJ did not cite the record to indicate what physical examination he was referring to or how the examine results were inconsistent with Dr. Siddiqui's limitations. (*Id.*) Plaintiff argues the ALJ erred in his assessment of Dr. Siddiqui's

opinion because the ALJ failed to follow the factors outlined in the Regulations and the ALJ misconstrued the record.  (Dkt. No. 9 at 13-17 [Pl.'s Mem. of Law].)

To be sure, the ALJ discussed Dr. Siddiqui's opinion and provided two reasons for his weight determination; however, the ALJ's conclusory reasons and lack of analysis fall short of satisfying the requirements of 20 C.F.R. § 404.1527.  Further, the ALJ failed to provide "good reasons" for the weight he afforded Dr. Siddiqui. An ALJ is required to provide "good reasons" for the weight he gives to the treating source's opinion. *See Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir.1998).  "We do not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

The ALJ essentially discredits Dr. Siddiqui's opinion because the ALJ concluded the limitations he imposed stemmed from an impairment unsupported by diagnostic testing.  Although the ALJ did not elaborate further, he apparently relied on 20 C.F.R. § 404.1527(c)(2) which states a treating source's opinion will be given controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  Here, the ALJ failed to acknowledge that Dr. Siddiqui indicated Plaintiff's functional limitations were based on Plaintiff's medical conditions of rheumatoid arthritis, osteoarthritis, and fibromyalgia.  (T. 332.)  Plaintiff's treating rheumatologist, Dr. Flinkenstein, stated that although Plaintiff had no objective signs of rheumatoid arthritis,

her fibromyalgia may be causing her symptoms. (T. 279.)[4] Further, the Second Circuit

has concluded "there are no objective tests which can conclusively confirm

[fibromyalgia]." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (citing

*Preston v. Sec. of Health and Human Servs.,* 854 F.2d 815, 818 (6th Cir.1988); *see*

*Sarchet*, 78 F.3d at 306; *see also Harman v. Apfel,* 211 F.3d 1172, 1179–80 (9th

Cir.2000); *Kelley v. Callahan,* 133 F.3d 583, 585 n. 2 (8th Cir.1998). In addition, it is

evident from the record that Plaintiff was diagnosed with rheumatoid arthritis; however,

that diagnosis was questioned and Plaintiff was subsequently diagnosed with

fibromyalgia. (T. 225, 279.) The ALJ overlooked the medical evidence which indicated

that Plaintiff's symptoms remained the same, regardless of the diagnosis.

The ALJ's reasoning to discredit Dr. Siddiqui's opinion, because it was based on

"information from [Plaintiff]," also implies the ALJ's discredited the opinion because he

believed the limitations were based on Plaintiff's subjective complaints alone. (T. 19.)

A doctor's reliance on subjective complaints does not undermine his opinion of the

Plaintiff's functional limitations. *Green-Younger*, 335 F.3d at 99. Therefore, the ALJ

erred in affording Dr. Siddiqui's opinion "limited weight" based on his apparent reliance

on Plaintiff's subjective reporting of symptoms.

The ALJ also appears to rely on 20 C.F.R. § 404.1527(c)(2) in concluding Dr.

Siddiqui's opinion was inconsistent with Plaintiff's physical examinations. The

Regulation states a treating physician's opinion should be given controlling weight if it

"is well-supported by medically acceptable clinical and laboratory diagnostic

---

[4]     ". . . it is common in cases involving [fibromyalgia] to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor)." SSR 12-2p.

techniques," which was discussed supra, and "is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2). The ALJ appears to reason the opinion was not entitled to controlling weight because it was "inconsistent" with physical examinations. The ALJ failed to provide an analysis indicating how Plaintiff's examinations were inconsistent with Dr. Siddiqui's opinion and Plaintiff's diagnosis of fibromyalgia. Further, even if the ALJ properly determined Dr. Siddiqui's opinion was not entitled to controlling weight under 20 C.F.R. § 404.1527(c)(2), the ALJ was still required to evaluate the opinion evidence in accordance with 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3)-(6). The ALJ's decision failed to indicate that he took the remaining factors outlined in 20 C.F.R. § 404.1527 into consideration. Therefore, remand is recommended for a proper evaluation of Dr. Siddiqui's opinion based on the factors outlined in 20 C.F.R. § 404.1527(c)(2).

### C. Whether the ALJ Properly Evaluated Plaintiff's Fibromyalgia under SSR 12-sp

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 9 at 17-18 [Pl.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ failed to comply with SSR 12-2p which provides guidance on the evaluation of fibromyalgia. (Dkt. No. 9 at 17-18 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ failed to provide a proper analysis specifying how Plaintiff's pain and other symptoms due to her fibromyalgia translated into an ability to perform sedentary work. (*Id.* at 18.) SSR 12-2p states, "[w]idespread pain and other symptoms associated with [fibromyalgia], such as fatigue, may result in exertional

limitations that prevent a person from doing the full range of unskilled work." SSR 12-2P (S.S.A. July 25, 2012).

While the ALJ does discuss Plaintiff's testimony of pain and symptomology, the ALJ appears to discredit those complaints based on objective medical imagining alone, which goes against the credence of SSR 12-2p. (T. 17-19.)[5] For example, in the ALJ's discussion of Plaintiff's testimony regarding pain in her hands, the ALJ cited X-rays which indicated osteoarthritis; however, the ALJ then diminishes Plaintiff's allegations stating clinical examinations revealed no swelling. (T. 17-18.) There is no indication from the decision if the ALJ evaluated Plaintiff's complaints of pain in her hands in the context of her fibromyalgia. Remand is recommend for a proper evaluation of Plaintiff's symptoms in light of her fibromyalgia in accordance with SSR 12-2p.

Further, Plaintiff argues the ALJ erred in his conclusion that Plaintiff's statements regarding her symptoms were not entirely credible and the ALJ erred in concluded Plaintiff could perform her past relevant work. (Dkt. No. 9 at 11-12 [Pl.'s Mem. of Law].) This Court recommends that a proper credibility analysis also be conducted on remand in light of a proper evaluation of medical evidence and in accordance with SSR 12-2p. Further, as remand is recommended for the reasons stated in Part IV.A-B, this Court also recommends remand for a proper step four analysis. This opinion should not be

_____

[5]     "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning. We will make every reasonable effort to obtain available information that could help us assess the credibility of the person's statements."  SSR 12-2p (S.S.A. July 25, 2012)

read as to preclude the ALJ from seeking additional evidence, a consultative exam, or any other opinion evidence he may find helpful in formulating an RFC determination.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED in PART and DENIED in PART**, and the Commissioner's determination be **GRANTED in PART and DENIED in PART**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        December 7, 2015

William B. Mitchell Carter
U.S. Magistrate Judge